Jerry Randall WATSON, Appellant,

v.

BEST FINANCIAL SERVICES, INC., Appellee.

No. 2006-SC-000393-DG.

Supreme Court of Kentucky.

Jan. 24, 2008.

Stuart E. Alexander, III, Kathleen M.W. Schoen, Tilford, Dobbins, Alexander, Buckaway & Black, LLP, Louisville, KY, Counsel for Appellant.

John C. Miller, Bertram, Cox & Miller, LLP, Campbellsville, KY, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

Kentucky Rules of Civil Procedure (CR) 54.02 allows a trial court dealing with multiple claims or multiple parties in a single action to grant a final judgment as to fewer than all of the claims or parties upon a determination that there is no just reason for delay. In this employment contract case, the trial court used this procedural device in granting a final judgment in favor of the employer on all of the employee's claims, which left only the employer's counterclaim in the action. But the employee failed to file his notice of appeal within thirty days of the entry of the judgment.[1] When the employee finally did file his notice of appeal six months after the entry of the judgment, the employer moved the Court of Appeals to dismiss the appeal. The Court of Appeals dismissed the appeal as untimely. We affirm because we agree that the trial court

---

1. CR 73.02.

had the power under CR 54.02 to grant a final judgment on less than all of the claims and to certify to the appellate court that there was no just cause for delay. And having made that determination in this case, Watson ignored the trial court's certification to his peril.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY.

The employer, Best Financial Services, Inc., hired the employee, Jerry Randall Watson, to work as the branch manager in one of Best Financial's company offices. The parties entered into a written employment agreement, and the branch office opened for business several weeks later.

Just less than five years after the opening of the branch office, believing that Best Financial had breached the employment agreement in failing to pay him tenure bonuses to which he was entitled, Watson unilaterally caused (in a series of four deposits) a total of $228,782.96 to be transferred from Best Financial to his attorney's escrow account. After making the last deposit, Watson sent Best Financial a letter in which he notified the company of the transfers. Ten days later, Best Financial terminated Watson's employment.

About a month after his termination, Watson sued Best Financial for (1) breach of the employment agreement, (2) unpaid compensation (wages and bonuses), and (3) defamation. Best Financial, in response, filed an answer and counterclaim. The bases for the counterclaim were (1) breach of the confidentiality clause of the employment agreement and (2) breach of the agreement's covenant not to compete following Watson's termination. And Best Financial later amended the counterclaim to include a count for breach of fiduciary duty.

Over one year after Best Financial filed its answer and counterclaim, it moved the trial court for summary judgment in its favor on Watson's claims. Based on the trial court's interpretation of the employment agreement and the effect of the parties' undisputed conduct, it granted partial summary judgment to Best Financial on July 28, 2004. After the partial summary judgment, the only remaining issue concerning Watson's claim was his annual bonus for the time period of July 1, 2001, through March 20, 2002. Based on the trial court's findings and conclusions pertaining to the proper time period for calculating Watson's annual bonus, Best Financial paid Watson his annual bonus.

Having resolved all of the issues alleged in Watson's complaint, at the request of counsel for both parties, the trial court issued the following order, which the court clerk entered on July 25, 2005:

> The parties appeared before the on [sic] Court [sic] June 9, 2005[,] and advised the Court that the issue of the annual bonus due to the Plaintiff by the Defendant for the period of July 1, 2001[,] to March 20, 2002[,] has been resolved by the parties in accordance with the Court[']s Order. By virtue of the resolution of the one outstanding claim, all claims contained in the Plaintiff's Complaint have been resolved either through payment or through entry of the Partial Summary Judgment entered on July 28, 2004. The Court is otherwise sufficiently advised;
>
> IT IS HEREBY ORDERED AND ADJUDGED that there is no just cause for delay and the Partial Summary Judgment entered on July 28, 2004[,] and the Order ruling [sic] entered on April 27, 2005[,] [denying Watson's motion to alter, amend, or vacate the partial summary judgment] are final and appealable.

The circuit clerk distributed copies of the order to the attorneys of record. At the time, however, Watson's current counsel had a motion pending to be substituted as Watson's counsel of record. The trial court heard the motion for substitution of counsel on August 16, 2005, and granted the motion the same day.

Following the substitution, neither party filed a notice of appeal within thirty days of the trial court's final and appealable order. Instead, Watson's current counsel attempted to amend the complaint to assert additional claims. The trial court denied the attempt. Following the denial, by agreement of the parties, the trial court issued an agreed order dismissing Best Financial's counterclaims without prejudice. The circuit clerk entered this agreed order on December 29, 2005.

Watson then filed a notice of appeal. On motion of Best Financial under CR 76.34(6), the Court of Appeals dismissed the appeal because it concluded that the appeal was untimely. In its order dismissing the appeal, the Court of Appeals reasoned that the trial court's order of July 25, 2005, which included the language certifying the full disposition of Watson's complaint as final and appealable, triggered the running of the thirty-day time period for Watson to file his notice of appeal. We agree with the Court of Appeals.

## II. *RESOLUTION OF THE ISSUE.*

Under CR 54.02(1),

(1) When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

CR 54.02 is substantively equivalent to Federal Rules of Civil Procedure (FRCP) 54(b). Federal case law is instructive on the purpose of the rule. It was promulgated in its original form to meet the need—demonstrated in multiple claims actions in which claims may be joined liberally—"for relaxing the restrictions upon what should be treated as a judicial unit for purposes of appellate jurisdiction."[2] Sound judicial administration following the implementation of rules of civil procedure governing joinder of claims "did not require relaxation of the standard of finality in the disposition of the individual adjudicated claims for the purpose of their appealability."[3] "It did, however, demonstrate that, at least in multiple claims actions, some final decisions, on less than all of the claims, should be appealable without waiting for a final decision on all of

**2.** *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 432–33, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); *see Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 3, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (*citing Sears* in examining the use of FRCP 54(b)).

**3.** *Id.* at 432, 76 S.Ct. 895.

the claims."[4] The rule was a departure from "the former general practice that, in multiple claims actions, all the claims had to be finally decided before an appeal could be entertained from a final decision upon any of them."[5]

In any case presenting multiple claims or multiple parties, CR 54.02, like FRCP 54(b), vests the trial court—as the tribunal most familiar with the case—with discretion to "release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions."[6] In such a case, the trial court functions as a "dispatcher."[7] If the trial court grants a final judgment upon one or more but less than all of the claims or parties, that decision remains interlocutory unless the trial court makes a separate determination that "there is no just reason for delay."[8] And the trial court's judgment shall recite such determination and shall recite that the judgment is final.[9]

A reviewing court, in turn, examines the trial court's certification on two levels. First, an appellate court must determine that the trial court rendered a final adjudication upon one or more claims in litigation.[10] A final adjudication is a judgment that conclusively determines the rights of the parties in regard to that particular phase of the proceeding.[11] Second, once an appellate court determines that the trial court rendered a final adjudication upon one or more claims in litigation, an appellate court then examines the trial court's certification for abuse of discretion in releasing for appeal a final decision upon one or more, but less than all the claims.[12]

Here, the trial court rendered a partial summary judgment that adjudicated all but one issue presented in Watson's complaint. The trial court's order of July 25, 2005, resolved conclusively the remaining issue and fully disposed of Watson's complaint. So the trial court's order including the requisite recitals satisfies the requirement of a final adjudication upon one or more claims in litigation.

Watson argues that Kentucky courts have repeatedly held that orders that are actually interlocutory in nature are not final and appealable, regardless of a trial court's inclusion of the requisite recitals in the order. And Watson contends that the trial court's order of July 25, 2005, was interlocutory because at the time of its entry, Best Financial had a counterclaim pending. By the express provisions of CR 54.02, however, a trial court may grant a final judgment on less than all the claims when more than one claim for relief is presented in an action, even when the remaining claim is a counterclaim. It is not the mere presence of a counterclaim that renders CR 54.02 certification inappropriate.[13] If it did, CR 54.02 "would lose much of its utility."[14] The significance of a counterclaim for CR 54.02 purposes turns on its "interrelationship

---

**4.** *Id.*

**5.** *Id.* at 434, 76 S.Ct. 895.

**6.** *Id.* at 437, 76 S.Ct. 895.

**7.** *Id.* at 435, 76 S.Ct. 895.

**8.** CR 54.02.

**9.** *Id.*

**10.** *Hale v. Deaton,* 528 S.W.2d 719, 722 (Ky. 1975).

**11.** *Id.*

**12.** *Sears,* 351 U.S. at 437, 76 S.Ct. 895.

**13.** *Curtiss–Wright,* 446 U.S. at 9, 100 S.Ct. 1460.

**14.** *Id.*

with the claims on which certification is sought," [15] and factors into the issue of whether the trial court abused its discretion if the certification is appealed timely.

An underlying issue in this case is what is required of the trial court in making a record concerning its certification. We believe that our predecessor court set out adequate guidelines for trial courts in a case decided over forty years ago, *Jackson v. Metcalf.*[16] In that case, Jackson appealed from an unfavorable judgment in a land dispute. The trial court determined that Metcalf owned a part of the disputed property and certified this judgment to be final and appealable without just reason for delay. Jackson appealed, and Metcalf filed a motion to dismiss the appeal. Although that case concerned the slightly different issue of whether the lawsuit actually involved multiple claims, we borrow its logic in affirming the trial court's exercise of discretion. The Court stated:

> The trial judge could have reasonably refused to certify the appealability of the order in question under CR 54.02. Nevertheless[,] we believe that where it is reasonably debatable whether a single claim or multiple claims are involved, the trial judge's exercise of discretion in certifying under CR 54.02 will be conclusive as to that issue.

> In the exercise of that discretion[,] the trial judge must balance this Court's historic policy against piecemeal appeals and the practical needs of the particular case before him. The entering of certification under CR 54.02 is no more automatic than is an extension of time to file a record on appeal under CR 73.08.

The trial judge should always determine in entering a certification under CR 54.02 that the order being certified is sufficiently important and severable to entitle a party to an immediate appellate review.[17]

A trial court should not grant CR 54.02 requests routinely or as a courtesy to counsel. Each case must be evaluated on a case-by-case basis. And for that reason, we, like the United States Supreme Court, are reluctant to establish fixed guidelines for the trial courts to follow.[18] In the event, however, that a trial court exercises its discretion and determines that a party is entitled to immediate appellate review, a party failing to appeal from a final judgment containing the requisite recitals—as occurred here—does so to its peril. Given the procedural posture of this case, we conclude that it would be inappropriate to review the trial court's initial certification for abuse of discretion, the second level of appellate review. If Watson believed that the trial court abused its discretion in certifying Watson's claims, he should have filed his notice of appeal within thirty days of the trial court's final judgment under CR 54.02 and raised that issue on appeal.[19]

In the closing paragraphs of his brief, Watson argues that this Court should not overlook the fact that his current counsel, substituted on August 16, 2005, did not receive a copy of the July 25, 2005, order. Instead, the circuit clerk sent the order to his former counsel, who remained at that time Watson's counsel of record. But the July 25, 2005, order was part of the court record and available for

---

15. *Id.*

16. 404 S.W.2d 793 (Ky.1966).

17. *Id.* at 794–95 (internal citations omitted).

18. *Curtiss–Wright,* 446 U.S. at 10–11, 100 S.Ct. 1460.

19. *Id.* at 10, 100 S.Ct. 1460.

review by Watson's current counsel when the hearing on the substitution occurred. While we sympathize with the position in which Watson's current counsel was placed when he was substituted in a case after entry of a final judgment under CR 54.02, at all times, a lawyer shall act with reasonable diligence and promptness in representing a client.[20] Reasonable diligence and promptness includes reviewing the court record in the case into which the lawyer is substituted.

In conclusion, the trial court's order of July 25, 2005—that fully disposed of all the claims in Watson's complaint and included the requisite language certifying the full disposition of Watson's complaint as final and appealable—triggered the thirty-day time limit for Watson to file his notice of appeal. Because Watson did not file his notice of appeal from this order within thirty days, it was untimely. We affirm the Court of Appeals' dismissal.

All sitting, except SCHRODER, J.

LAMBERT, C.J.; CUNNINGHAM, NOBLE, and SCOTT, JJ., concur.
ABRAMSON, J., concurs in result only.

---

**20.** Rules of the Supreme Court (SCR) 3.130(1.3).