RENDERED: MARCH 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0950-MR

KENNETH R. THURMAN                                                    APPELLANT

v.
APPEAL FROM BRECKINRIDGE CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 13-CI-00069

JIMMY L. THURMAN; CHARLES
THURMAN; HOWARD THURMAN;
JUDY PATE; MARY R.
PENNINGTON; ROSA WHITE; AND
TAMMY LYNN LACK                                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: DIXON, McNEILL, AND TAYLOR, JUDGES.

McNEILL, JUDGE: Kenneth R. Thurman ("Kenneth") appeals from two orders

of the Breckinridge Circuit Court, one partitioning real property between the

parties and the other dissolving a partnership between Kenneth and appellee Jimmy

L. Thurman ("Jimmy"). Finding no error, we affirm.

In 2013, Jimmy filed a complaint in Breckinridge Circuit Court seeking to partition real property owned by the parties, who are siblings and their respective spouses. The complaint also sought to dissolve a cattle farming partnership between Kenneth and Jimmy. After a short period of discovery, the parties underwent mediation and entered a settlement agreement as to the property partition claims. The settlement agreement was eventually tendered to and adopted by the court in an order dated August 31, 2016. This ruling was further incorporated into a December 27, 2017, order which is the subject of this appeal.[1]

Meanwhile, Kenneth filed an amended complaint also requesting dissolution of the cattle farming partnership and to balance the partnership's accounts.[2] The partnership claims were tried by bench trial on September 28, 2020. According to the complaint and counterclaim, both Jimmy and Kenneth sought a judgment against the other for money they believed they were owed to balance their capital accounts – $55,690.00 for Jimmy and $231,691.08 for Kenneth.[3] Jimmy also sought compensation for unpaid timber proceeds, and

---

[1] Kenneth filed a motion to alter, amend, or vacate the December 27, 2017, order which was partially granted by order dated January 29, 2018.

[2] Kenneth also asserted a defamation claim which is not a subject of this appeal.

[3] At the time of trial, these figures had been modified. Jimmy also sought two pieces of farm equipment, a baler and a rake.

Kenneth for ownership interest in a five acre plot of land deeded to Jimmy but allegedly purchased with partnership funds.

Jimmy, Kenneth, and Kenneth's wife, Janet, testified as witnesses at trial. The testimony generally established that an oral partnership to raise cattle was formed around July 1996. However, each partner's obligation to the partnership pursuant to the agreement is somewhat unclear. Kenneth testified that he was responsible for managing the farm while Jimmy was responsible for supplying the financing. Slightly contradicting this, Jimmy testified that expenses were to be split evenly between the parties. Both parties agreed the partnership profits were to be shared.

Kenneth and Jimmy each testified to their contributions to the partnership, often disputing the other's claims. As one might imagine in an oral partnership between two siblings, the operation was conducted informally with little record-keeping and frequent commingling of assets. Both utilized their personal accounts for partnership expenses, and Kenneth testified that each contributed to the partnership without knowing what the other was doing. Both parties submitted voluminous documents – copied checks, receipts, and invoices – in support of their claimed expenses.

Following the evidence, the trial court entered findings of fact, conclusions of law, and judgment awarding $7,097.05 to Jimmy for his share of

-3-

the timber sale proceeds, dismissing Kenneth's claim to the five acre tract of land alleged to be partnership property, and dissolving the partnership between the parties. As to the balancing of the partnership accounts, the trial court found that neither party had presented sufficient evidence to prove their claims. It noted the lack of partnership books and lamented that "[t]he parties comingled their assets and their expenses to such a degree that it is not possible to make a true and correct accounting for each claim for each party." This appeal followed. Further facts will be set forth as necessary below.

Kenneth first argues the trial court's December 27, 2017, order misconstrued the parties' settlement agreement and reduced the width of preexisting easements outside the scope of the litigation, depriving him access to his land. Jimmy contends that Kenneth's appeal from the December 27, 2017, order is untimely. We agree.

CR[4] 54.02 provides that a "court may grant a final judgment upon one or more but less than all of the claims or parties . . . upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final." *See also Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722, 726 (Ky. 2008). Here, the December 27, 2017, order finally adjudicated the land partitioning claims. Kenneth filed a motion to alter, amend, or

---

[4] Kentucky Rules of Civil Procedure.

vacate which was denied in part on January 30, 2018.[5] Both orders included the required recitations. Therefore, pursuant to CR 54.01 and 54.02, these orders were final and appealable, and Kenneth had until March 1, 2018,[6] to file his appeal. Kenneth filed his appeal on August 18, 2021. Therefore, his appeal of the December 27, 2017, order, and any arguments related thereto, are untimely. *See Watson*, 245 S.W.3d at 727 ("In the event . . . a trial court exercises its discretion and determines that a party is entitled to immediate appellate review, a party failing to appeal from a final judgment containing the requisite recitals . . . does so to its peril.").

Kenneth next argues the trial court failed to consider KRS[7] 362.235, KRS 362.245, KRS 362.250, KRS 362.315, and KRS 362.340 when dissolving the partnership.[8] In general, these provisions concern the conduct of partners and balancing of partnership accounts. We would note the trial court's actual ruling was that "[t]he Partnership does not have a sufficient set of books or records for this Court to use to apply the provisions of KRS Chapter 362 upon the dissolution

---

[5] The trial court granted the motion to alter, amend, or vacate in part and amended its judgment on January 29, 2018.

[6] Thirty days from the notation of service of the order denying Kenneth's motion to alter, amend, or vacate.

[7] Kentucky Revised Statutes.

[8] The parties agree that the Kentucky Uniform Partnership Act, KRS Chapter 362, governs their partnership claims.

and winding down of the partnership business and affairs." Therefore, to clarify, the court did not overlook or refuse to consider KRS Chapter 362, but instead held the parties' inadequate records prohibited it from balancing the partnership accounts.

Our standard of review of a trial court's findings of fact is whether they are clearly erroneous. CR 52.01. Factual findings are not considered clearly erroneous if they are "supported by substantial evidence." *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005) (citations omitted). We review a trial court's conclusions of law *de novo*. *Bishop v. Brock*, 610 S.W.3d 347, 350 (Ky. App. 2020) (citation omitted).

The trial court found that both parties failed to present sufficient evidence of their claims concerning the partnership accounts, primarily because the "parties comingled their assets and their expenses to such a degree that it is not possible to make a true and correct accounting" of each partner's claims. This finding was supported by substantial evidence.

As one example of comingling, the parties merged their individual cattle with the partnership cattle, and partnership hay was used to feed all three types of cattle. Another example, both partners paid for partnership expenses out of their personal funds, and received income from partnership assets, with no system in place to ensure that their contributions and withdrawals were equal.

There are no official partnership books. While Kenneth did submit a binder full of documents in support of his claims, these records are often confusing, indecipherable, and incomplete.

For instance, in one of the exhibits, titled "Jimmy Thurman's Profit and Loss Statement Vs. Kenneth Thurman's Profit and Loss Statement," is what appears to be a copy of the partnership's bank account statement. Next to an entry labeled "Interest Payment" is an annotation "Kenneth make int. payment." However, there is no corresponding check or any other evidence supporting this assertion. Therefore, as proof of an expense, this record is incomplete.

As another example, a second exhibit purports to show Kenneth's expenses. It consists of a list of itemized expenses for each year with copied checks as supporting documentation. For the year 2006, Kenneth lists $4,708.34 as his expenses, but then, inexplicably, claims $16,766.19 as his "monies due." We find nothing in the record explaining or supporting this difference.

We are confronted with a situation where the parties presented conflicting and incomplete evidence of their claims. The trial court weighed this evidence and determined that it could not reconcile the partnership accounts without speculating. Having reviewed the evidence, we cannot say this finding was erroneous.

As to Kenneth's specific claim concerning KRS Chapter 362, he cites various provisions of the Uniform Partnership Act to argue that he was entitled to a judgment against Jimmy to balance the partnership accounts. For example, he claims that he presented ample evidence that Jimmy violated the partnership agreement, which would allow the court to dissolve the partnership for fraud pursuant to KRS 362.340 and authorize him "[t]o be indemnified by the person guilty of the fraud or making the representation against all debts and liabilities of the partnership." KRS 362.340(3). However, the trial court did not make a finding of fraud or breach of the partnership agreement.

Essentially, Kenneth argues the trial court should have weighed the evidence and assessed the witness credibility differently. At trial, Kenneth testified that when the partnership was formed, Jimmy agreed to work the farm on his days off, but that Jimmy had not held up his end of the bargain, leaving him to do all the work. In contrast, Jimmy said that he went to the farm every Sunday (his day off) for fifteen years. Apparently, the trial court found Jimmy's testimony more reliable. "[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted).

Kenneth also argues he began winding up the partnership business in 2010 and is entitled to renumeration for his services pursuant to KRS 362.235(6).

Admittedly the trial court's ruling did not explicitly address compensation for winding up the partnership, only holding that Kenneth was not entitled to compensation for managing the cattle business. However, we find no error because Kenneth did not prove that he was entitled to any such compensation.

KRS 362.235(6) provides that "[n]o partner shall be entitled to remuneration for acting in the partnership business, except that a surviving partner shall be entitled to reasonable compensation for his services in winding up the partnership affairs." We first note that there was conflicting evidence as to when the partnership ended. Jimmy testified the partnership ended in either 2011 or 2013.[9] Kenneth claims 2010. The trial court determined it ended sometime in 2011.

Regardless of the actual date of dissolution, Kenneth put on no specific evidence as to any services he performed in winding up the partnership. Further, the trial court's holding that the parties did not have sufficient records for it to apply KRS Chapter 362 implicitly encompassed this claim. For the reasons stated above, we find no error in that holding.

Kenneth next argues the trial court erred when it ruled that Jimmy's proceeds from the timber cutting were not a gift. In 2010, Kenneth, Jimmy, and

---

[9] Jimmy, in fact, testified that the partnership ended when he filed his claim in 2011. However, his claim was filed in 2013. It is therefore unclear whether he meant 2011 or 2013.

two of their siblings hired a timber company to cut timber on land they owned together.  Kenneth testified that Jimmy gave him his share of the proceeds to turn the now cleared land into pastureland for the cattle.  Jimmy denied this.  The trial court held that the requisite elements of an *inter vivos* gift had not been met.

We agree with the trial court but on slightly different grounds.[10]  The requirements of a valid *inter vivos* gift are:  (a) a competent donor; (b) an intention to make the gift; (c) an intention to take it; (d) the gift must be complete; (e) the property must be delivered and go into effect at once; and (f) the gift must be irrevocable.  *Howell v. Herald*, 197 S.W.3d 505, 507 (Ky. 2006).  "If any of the elements of the gift are absent or incomplete, then the gift will fail."  *Id.*  "[T]he burden of establishing the gift rests on the party claiming it[.]"  *Knox v. Trimble*, 324 S.W.2d 130, 132 (Ky. 1959) (citation omitted).

The trial court determined that element (e), transfer of the gift, was not complete because Jimmy never had physical possession of the money.  The evidence was that the timber company paid the proceeds directly to Kenneth.  However, transfer of a gift can be actual, symbolic, or constructive.  *Howell*, 197 S.W.3d at 508.  Therefore, the fact that Jimmy never had actual possession of the money is not dispositive of whether a gift was made.  Here, the relevant issue is

---

[10] "[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record."  *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

Jimmy's intent. *See Howell*, 197 S.W.3d at 509 ("[W]hen a gift is constructively delivered, the intent of the grantor to part with dominion and control is the ultimate factor in determining whether the gift was complete.").

Here, the evidence of Jimmy's intent was inconclusive. Kenneth testified that Jimmy told him to keep the money to reinvest in the farm. Jimmy disputes this. Kenneth testified that he converted the cleared property into pastureland for the partnership cattle which benefitted both he and Jimmy. Kenneth argues this is evidence as to Jimmy's intent to reinvest the money. However, there was contrary evidence that when the parties split the proceeds from cattle sales, Jimmy's share went to him directly and then he put the money into the partnership account. This is some evidence that if Jimmy wanted the money to be used for the benefit of the partnership, he would have deposited it into the partnership account rather than orally gifting it to Kenneth. The evidence necessary to establish intent must be clear and convincing. *Howell*, 197 S.W.3d at 507. Here, the evidence of intent was insufficient to establish an *inter vivos* gift. Therefore, we find no error.

Finally, Kenneth argues the trial court erred in determining the five acre tract of land was not partnership property. In 1998, Jimmy purchased a five acre plot of land. To fund the purchase, Jimmy took out a personal loan from his bank. This balance was transferred over to the partnership account in 1999. Funds

from the partnership account were then used to pay off this balance. Kenneth argues that because partnership funds were used to pay back the original loan used to purchase the five acres, the land should be considered partnership property.

Kenneth cites KRS 362.185(2) in support, which provides "[u]nless the contrary intention appears, property acquired with partnership funds is partnership property." The trial court determined that the evidence suggested the property was Jimmy's alone, not partnership property. We agree. First, the property was not acquired with partnership funds. The property was purchased with personal funds from a loan taken out in Jimmy's name. The fact that partnership funds were later used to pay back that loan does not equate to purchasing the property with partnership funds.

Regardless, the evidence showed a contrary intention, rebutting KRS 362.185(2)'s presumption. As noted by the trial court, the deed was in Jimmy's name only, not the name of the partnership. Further, the fact that the original source of the funds to purchase the property came from a personal loan to Jimmy suggests the five acres were individual property, not partnership property. We discern no error.

Based upon the foregoing, the orders of the Breckinridge Circuit Court are affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Stephen G. Hopkins
Hardinsburg, Kentucky

BRIEF FOR APPELLEE JIMMY L. THURMAN:

Jerry M. Coleman
Elizabethtown, Kentucky