RENDERED: JANUARY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0327-MR

TRUST OF LEE O. GASTON, A
KENTUCKY TRUST BY AND
THROUGH LARRY GASTON,
TRUSTEE                                                                    APPELLANT

|  |  |  |
|---|---|---|
| v. | APPEAL FROM BULLITT CIRCUIT COURT<br>HONORABLE JOHN T. ALEXANDER, JUDGE<br>ACTION NO. 20-CI-00721 |  |

ANGELENA ETHERTON; JOHN A.
SCHMIDT; KATHLEEN SCHMIDT;
SCHMIDT LAW OFFICE, P.S.C.;
AND STOCK YARDS BANK AND
TRUST COMPANY                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

COMBS, JUDGE: The Trust of Lee O. Gaston, through Larry Gaston, Trustee,

(the Trust), appeals from the summary judgment of the Bullitt Circuit Court

entered in favor of Angelena Etherton and from an order that granted her motion to quash discovery. After our review, we affirm.

Lee O. Gaston died in 1990, and his will was duly admitted to probate. It contained a testamentary Trust created and established for the benefit, in part, of his widow, Mary K. Gaston. Based upon the Trust terms, the trustee was to pay Trust income to Mary over her lifetime; disbursements from principal were authorized as well.

John A. Schmidt of Schmidt and Etherton Law Offices, P.S.C., was appointed successor trustee in June 2012. At that point, the corpus of the Trust consisted of approximately $586,000 held in bank and investment accounts at Stock Yards Bank as well as a parcel of real estate in Shepherdsville. The real estate was eventually sold and netted approximately $300,000.

Mary Gaston was in regular contact with Stock Yards Bank concerning her requests for disbursements from the Trust. She became dissatisfied with Schmidt and the bank representatives for their alleged failure to provide a satisfactory accounting concerning Trust assets.

In March 2019, Gaston hired counsel to petition the court for an accounting of the Trust's assets, distributions, and expenses. Schmidt was subsequently removed as trustee. He had allegedly transferred nearly $200,000 in

the Trust's funds to various bank accounts held in his name and his firm's name. He also transferred funds to a joint account held with his wife, Kathleen Schmidt.

In September 2020, the Trust, through its trustee, filed a civil action against: Schmidt; his law firm; his wife; Stock Yards Bank; Brenda Elliott (a non-attorney employee of Schimdt's firm); and the Appellee, Angelena Etherton, a practicing attorney. In its complaint, the Trust alleged that John Schmidt breached his fiduciary duty to the Trust; negligently invested its assets; converted its assets; and committed other criminal offenses that damaged the Trust. It alleged that Kathleen Schmidt conspired with her husband to convert the Trust's assets. It also claimed that by failing to alert beneficiaries "to Schmidt's activities," Stock Yards Bank breached its duties to the Trust. The Trust charged that Brenda Elliott was "aware of" and "may have conspired with Schmidt in the financial improprieties and mismanagement" of client funds. Finally, with respect to Etherton, the Trust alleged that as a member of the bar and Schmidt's law firm, she owed a duty to the firm's clients. It asserted that Etherton "knew or should have known of the financial improprieties and mismanagement of [the Trust's] funds" and that as a result of her "negligent or intentional acts," the Trust had been damaged. However, it did not allege that Etherton converted Trust funds or conspired with anyone to do so.

Etherton answered and denied the allegations made against her. Etherton specifically denied that she was a current or former member, partner, and/or shareholder in Schmidt & Etherton Law Offices, P.S.C. She denied that she failed to comply with her duties, obligations, or any applicable standard of care. In response to written discovery, the Trust indicated that "Etherton's role, or lack thereof, in the enterprise will be clarified through discovery."

By mid-July 2022 -- nearly two years after the litigation was commenced, the Trust had propounded no discovery to Etherton. And so she filed a motion for summary judgment. Etherton argued that there had never been a basis to include her as a party to the civil action against Schmidt and the others. She contended that she was entitled to judgment as a matter of law because the Trust could not show that she owed any duty to it -- and much less that she breached a duty. Attached to her memorandum in support of the motion were the responses of the Trust to her requests to admit, in which the Trust admitted that Etherton had never served as trustee nor had she provided legal services to the Trust. She also explained that in response to discovery propounded to Schmidt, it was disclosed that Schmidt had been the sole shareholder of the firm and that there had never been a profit-sharing arrangement of any kind.

The Trust responded to Etherton's motion for summary judgment the following day with a notice to take her deposition.

Etherton filed a motion to quash the deposition and to stay discovery pending resolution of her motion for summary judgment. She observed that this first discovery effort came only after she had filed her dispositive motion. She contended that her deposition was scheduled merely to delay adjudication of her motion and to harass and cause her to incur unnecessary expense. She noted that in the nearly two years since the action had been filed, this was the first deposition scheduled with respect to **any claim** against **any party**. Finally, she asserted that no amount of discovery would alter the fact that she was entitled to judgment as a matter of law.

The Trust responded. It argued that Etherton owed it an ethical obligation; that she was "responsible for Schmidt's conduct"; and that she was not shielded from liability simply because the law practice operated as a professional services corporation. The Trust also contended that summary judgment was premature because it had not been given ample opportunity to complete its discovery. It argued that it was:

> entitled to learn what Etherton knew and when; the
> details of her handling of firm bank account information;
> what she saw and heard during field visits with [an
> auditor of the Administrative Office of the Courts];
> whether she ever reported Schmidt to the Bar or law
> enforcement; and the extent of her relationship with [a
> particular Stock Yard's Bank executive].

By an order entered on November 16, 2022, the Bullitt Circuit Court granted the motion for summary judgment. Its order included a comprehensive analysis of the issues. The trial court concluded, in part, as follows (citations excluded):

> Duty "presents a question of law." Its existence is indispensable to a successful negligence or malpractice action. The Trust has failed to establish a genuine issue of material fact as to whether Etherton owed a duty in this matter. It cannot proceed with a legal malpractice claim or a claim for breach of fiduciary duty without establishing that Etherton owed it a duty. It is undisputed that Etherton was never the trustee and Etherton never represented the Trust. [Moreover, under] Kentucky law, Etherton cannot be held personally liable for Schmidt's alleged acts merely because she was a law partner of Schmidt or a shareholder, director, or officer of the PSC.

By an order entered on February 20, 2022, the circuit court made its summary judgment final and appealable. The Trust filed a motion to alter, amend, or vacate, which was denied. This appeal followed.

On appeal, the Trust argues that the trial court erred by failing to allow it to conduct discovery and by failing to conclude that Etherton had a fiduciary duty to "[p]rotect the [T]rust from Schmidt" -- and that the breach of the alleged duty is actionable. It also contends that the court erred by concluding that the business organization of the firm shielded her from personal liability for her bad acts. Finally, the Trust argues that the trial court abused its discretion by

-6-

concluding that there was no just reason for delay and by designating its summary judgment as final and appealable. We disagree with each of these arguments.

CR[1] 56.03 provides that summary judgment should be granted only where the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Whether summary judgment is appropriate is a legal question involving no findings of fact. *Benton v. Boyd & Boyd, PLLC*, 387 S.W.3d. 341 (Ky. App. 2012). Consequently, we review the trial court's grant of summary judgment *de novo*. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366 (Ky. 2010).

In order to survive a motion for summary judgment, the nonmoving party must present "at least some affirmative evidence showing the existence of a genuine issue of material fact." *Benton*, 387 S.W.3d. at 343 (quoting *City of Florence v. Chipman*, 38 S.W.3d 387, 390 (Ky. 2001)). Accordingly, summary judgment is proper only after a party has been given ample opportunity to complete discovery and then fails to offer controverting evidence. *Pendleton Bros. Vending, Inc. v. Com. Finance & Administration Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988) (citing *Hartford Insurance Group v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628 (Ky. App. 1979)). The movant does not have to show that a party

---

[1] Kentucky Rules of Civil Procedure.

opposing summary judgment actually completed discovery but only that there was sufficient opportunity to do so. *Suter v. Mazyck*, 226 S.W.3d 837 (Ky. App. 2007).

The trial court did not err by concluding that the Trust had been afforded ample opportunity to complete discovery. Promptly after the complaint was filed, Etherton served written discovery upon the Trust, and it responded to those discovery requests. However, the Trust did not propound discovery to Etherton. It did not issue a subpoena pertaining to Etherton, a subpoena *duces tecum,* or written discovery; nor did it schedule a deposition. It took absolutely no steps to pursue its claim against her. It was only after Etherton filed her motion for summary judgment nearly two years later that the Trust indicated that it would undertake some discovery.

As the trial court noted, the Trust's claim against Etherton was not legally or factually complex. Our rules of civil procedure provide that the many methods of discovery may be employed in any sequence. CR 26.04. Moreover, the fact that a party is conducting discovery does not operate to delay any other party's efforts to engage in discovery. *Id.* If the Trust had proof that a genuine issue of material fact existed, it was incumbent upon it to tender that proof to the court. The Trust claimed that if given the opportunity, it would produce evidence in support of its claim against Etherton. However, it did not demonstrate why the evidence had not been presented, nor did it file an affidavit pursuant to the

provisions of CR 56.06 for a continuance to obtain it. Under these circumstances, the trial court did not err either by staying the Trust's belated effort to schedule a deposition or by concluding that the Trust had a reasonable opportunity to develop and complete discovery.

Where the Trust utterly failed to present affirmative evidence to show the existence of a genuine issue of material fact, Etherton, who never served as trustee or provided any legal services to the Trust, was entitled to judgment as a matter of law. The trial court correctly rejected the Trust's bare, conclusory assertion that Etherton's ethical duties under Kentucky's Rules of Professional Conduct imposed upon her an actionable, fiduciary relationship with the Trust as if she were the absolute guarantor of the legal services provided. The court properly rejected the Trust's claim that Etherton's role as a partner or executive officer of the firm *alone* rendered her culpable in Schmidt's activities. Its conclusion was correct as a matter of law.

Finally, the trial court did not abuse its discretion by granting Etherton's motion to make its order final and appealable. In any case involving multiple claims or multiple parties, the trial court is authorized by our rules of civil procedure to make an order immediately appealable. CR 54.02. Because the trial court is the tribunal most familiar with the case, this decision lies firmly within its discretion. *Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722 (Ky. 2008).

In the exercise of its discretion, the trial court must balance the traditional policy against piecemeal appeals and the practical requirements of the matter before it. *Commonwealth Bank & Trust Co. v. Young*, 361 S.W.3d 344 (Ky. App. 2012). It is required to consider whether the order being certified is sufficiently important and severable to entitle a party to immediate appellate review. *Id.*

Where the Trust failed to present affirmative evidence to indicate that Etherton breached any duty she owed to it, the issues remaining before the trial court pertained solely to the liability *of other parties*. Those claims are decidedly different -- both factually and legally -- from the claim resolved by the trial court's summary judgment in favor of Etherton. The claim asserted against Etherton is distinct and severable. Moreover, it was critically important to Etherton that the matter be finally decided. Once the court determined that she could not be held responsible for the claim asserted against her, she was properly dismissed from the proceedings.

Under these circumstances, the trial court clearly did not abuse its discretion by concluding that there was no just cause for delay and by making its judgment final and appealable.

We affirm the order and judgment of the Bullitt Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Laura E. Landenwich
Candace L. Curtis
Louisville, Kentucky

BRIEF FOR APPELLEE
ANGELENA ETHERTON:

Michelle L. Duncan
Crystal D. King
Louisville, Kentucky